**WILLIAMS et al. v. DE FEE, County Judge, et al.**

No. 4434.

Court of Civil Appeals of Texas. Amarillo.
Dec. 17, 1934.

Rehearing Denied Jan. 7, 1935.

R. E. McLaughlin, of Channing, and B. N. Richards, of Dalhart, for appellants.

Tom Collins, of Channing, and Tatum & Strong, of Dalhart, for appellees.

HALL, Chief Justice.

B. F. Williams, joined by other resident and qualified property taxpaying voters of Hartley county, instituted this suit for themselves and others similarly situated, against Hartley county, the county judge, county commissioners, and other necessary officers of said county, to enjoin the commissioners' court from selling certain bonds and applying the proceeds thereof to the improvement of certain roads in said county.

It appears that in May, 1932, upon the petition of more than sixty voters of said county, the commissioners' court ordered an election for the purpose of determining whether bonds should be issued by the county in the sum of $150,000, for the purpose of constructing, maintaining, and operating macadamized, graveled, or paved roads and turnpikes or in aid thereof in said county, and whether an ad valorem tax should be levied and a sinking fund provided for the redemption of said bonds at maturity. The election was held and resulted in more than two-thirds of the qualified voters voting in said election favoring the issuance of said bonds and the levying of said tax. It further appears that an order was entered declaring the result of the election, but that none of the bonds had been issued prior to the institution of this suit except to the amount of $10,000, which sum had been properly used upon the highways of said county. That expenditure is not questioned in this case.

The plaintiffs alleged that the commissioners' court had recently conceived the idea of issuing more of said bonds to the extent of $20,000 for the purpose of selling same and using the proceeds thereof to improve lateral roads in the county. The petition in this case attacks the validity of the bonds because, at the time the petition for the bond election was presented to the commissioners' court, the matter was not set down for a hearing and no notice thereof was given. That the election was arbitrarily called and the voters of the county had no opportunity to be heard. It is further alleged that because the bonds were voted for the purpose stated in the petition, the threatened use of the fund to be derived from the sale thereof in the construction of dirt roads and lateral county roads would be an unlawful and illegal diversion of said funds.

The petition was presented to the district judge, and a temporary restraining order was issued forthwith as prayed for, and the matter was set down for a time certain and all parties notified to appear for a hearing upon plaintiffs' prayer for a temporary injunction. There was a hearing, all parties being present, on November 1st. The court, after hearing the evidence, dissolved the temporary re-

straining order and denied appellants' prayer for a temporary injunction pending an appeal.

The case is presented here upon three contentions, the substance of which is as follows:

1. The court erred in dissolving the temporary restraining order and in refusing the temporary injunction because the bonds were voted for the purpose of constructing, maintaining, and operating graveled, macadamized, or paved roads, while the testimony shows that the commissioners' court proposes to use the money realized from the sale of the bonds to build a dirt road and to build bridges on roads which are not hard-surfaced.

2. The court erred in dissolving the temporary restraining order and refusing the temporary injunction because the testimony shows that the voters had been led to believe that the funds to be derived from the sale of the bonds would be used for the improvement of State Highways Nos. 5, 41, and 54, and would not be used for the improvement of county lateral roads, and because the evidence further shows that the commissioners' court now proposes to use the funds for the construction of dirt roads and a short, little-used county lateral road.

3. The court further erred because the testimony shows that one Howren, purporting to be a civil engineer, is in charge of the construction of the road in question, incurring obligations against the road bond fund of the county, and that the commissioners' court has never officially authorized the construction of the road merely as a dirt road or by hard-surfacing the same, and the county's funds are being thereby unlawfully diverted.

The testimony of County Judge R. A. De Fee is, in substance, that the commissioners' court had planned to issue and sell the authorized bonds to the extent of $20,000 and would have done so but for the restraining order of the court. That an order to that effect had been passed and the attorney had been requested to draw up the order, but it had not been placed upon the minutes of the court. That with the proceeds of the sale of said bonds, the court intended to procure right of way and the expenses in connection therewith in acquiring easements to caliche beds on State Highways Nos. 5, 41, and 54, and to build a hard-surfaced road, including two bridges, from Channing in a westerly direction on the Channing-Romero road for a distance of approximately three miles. Appellants' attorney stated that there was no objection to the proceeds derived from the sale of the bonds being used on state high-

ways. Judge De Fee further testified that the three miles of road running from Channing across the canyon was a part of the public road connecting Channing with Romero a distance of about forty miles. That the order passed by the commissioners' court related only to the issuance of the bonds and made no reference to any specific work to be done. That it was the agreement of the commissioners' court to hire and employ an engineer to prepare plans for that section of the Channing-Romero road running from Channing approximately three miles west which crosses the canyon. That the three-mile segment was to be graded and surfaced with caliche and gravel and hard-surfaced. That caliche and gravel were found right by the side of the road and had been obtained by the county from the owner of the property without cost. He further testified that the engineer, Howren, was superintending the building of this three miles of road, that the commissioners had allowed him $3,500 for bridges and culverts, and that there would be enough money left to hard-surface that part of the road. That the road which Howren is repairing is used by people from Romero and the western part of the county; that the Channing Independent School District extends west of the town for some mile and a half, and when the school opened this fall one of the bridges across the canyon had been washed out. Something had to be done in order to let the school bus travel over the road, and the court finally filled in a temporary detour road, hoping to get the bridge built. That the school bus brings in approximately twenty-five or thirty children and the road is necessary for that purpose. That application has been made for a mail route over that part of the Channing-Romero road. That there is much tourist travel from New Mexico over the Romero-Channing road and it cuts off about twenty-five miles in going from Romero to Channing.

Howren, the engineer, testified that he had been employed by the commissioners' court as county engineer, and with reference to the three miles of road running west out of Channing, he said he was building what was known as a hard-surfaced road. That he would use caliche, gravel, sand, and clay. That a lot of hard rock had shown up down in the canyon along the line of the road and that he was about half through with the work. That he had uncovered inexhaustible supplies of gravel right in the roadbed, two deposits of which he was saving for surface material. That the Austin Bridge Company had a contract with the county on the bridge,

the building of which he would supervise. That the part of the road which would be built under his supervision would be hard-surfaced. He showed that the three miles, including the cost of the bridges, could be built and hard-surfaced for considerably less than $20,000. That the three miles had been traveled for about twenty years and there is already a solid roadbed, which is a hard foundation. That he would only have to widen the road a little and hard-surface it with caliche, sand, and gravel.

The Forty-Second Legislature, by the Act of 1931, chapter 163, Vernon's Annotated Texas Civil Statutes, art. 2368a, provided that no county should thereafter enter into any contract for the prosecution and completion of any public work requiring or authorizing any expenditure in excess of $2,000 without first submitting such proposed contract or agreement to competitive bids and providing for the publication of notices, etc., and further provided that: "In case of public calamity, where it becomes necessary to act at once to appropriate money to relieve the necessity of the citizens, or to preserve the property of such county * * * or in case of unforeseen damage to public property, * *. * this provision shall not apply; and provided further, that it shall not be applied to contracts for personal or for professional services, nor to work done by such county or city and paid for by the day, as such work progresses." Section 2.

■ The county commissioners had the authority to employ Howren to superintend the improvement of this particular part of the Channing-Romero road, and we must presume in support of the action of the court that the work was being done under Howren's supervision and paid for by the day as the work progressed. This being the case, a formal contract entered upon the minutes of the commissioners' court was not required. It is true that some of the county commissioners testified that part of the proceeds realized from the sale of the bonds would be used upon other lateral dirt roads, but Judge De Fee, whose testimony the trial court evidently has accepted, does not agree with the testimony of such commissioners.

■■ Article 3, § 52, subd. (c), of the Constitution provides that the Legislature may authorize any county to issue bonds for "the construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof." This section does not limit the commissioners' court to the expenditure of funds for the maintenance and operation of such roads, but clearly authorizes the expenditure of funds for the construction of macadamized, graveled, or paved roads. It is a matter of common knowledge that before a highway can be macadamized, paved, or graveled, a sufficient and suitable roadbed must be prepared by grading, and to that extent it is a dirt road; but the testimony with reference to the three miles of road in controversy that the commissioners have employed an engineer to improve this part of the Channing-Romero road which has been used by the public for fifteen or twenty years, by having new bridges built in place of the bridges which were washed away by flood waters in June and by hard-surfacing the road with gravel, sand, and caliche is uncontradicted. According to the testimony of Howren, the work which he was employed to superintend is already halfway finished. The county has contracted with a bridge company to construct new bridges under the supervision of Howren.

We strongly incline to the opinion that the acts of the commissioners' court in repairing the three miles of road and rebuilding the bridges can be justified upon the ground that it was necessary for the court to act to relieve the necessity of the citizens, and especially school children who habitually travel said road. We do not, however, base our judgment upon that feature of the case.

■ We approve the action of the trial judge in so far as he dissolved the temporary restraining order and refused to grant a temporary injunction restraining the county, through its engineer, from repairing and hard-surfacing the three miles of road described in plaintiffs' petition. Since no contract has been made for expending any of the expected funds in constructing or repairing any dirt road, there was no basis for the issuance of a temporary injunction, especially in view of the fact that Judge De Fee testified no contract of that kind was being considered by the court as a body.

■ The purpose of a temporary injunction is to maintain the status quo and not to determine the rights of the parties in the subject-matter. James v. E. Weinstein & Sons (Tex. Com. App.) 12 S.W.(2d) 959. The general rule is that commissioners' courts must act as a body and not as individuals in making contracts for the construction of highways. Orange County v. Hogg (Tex. Civ. App.) 269 S. W. 225; Polly v. Hopkins, 74 Tex. 145, 11 S. W. 1084. And as a general rule their contracts of this character involving an expenditure of more than $2,000 are con-

trolled by the above-quoted Act of the 42d Legislature, c. 163, art. 2368a, Vernon's Ann. Civ. St.

We are not to be understood as holding that the commissioners' court of Hartley county is authorized to sell any of the bonds for the purpose of using the proceeds in repairing or constructing dirt roads; the extent of our holding being that the court cannot be enjoined from repairing and hard-surfacing the particular segment of road now under the supervision of Engineer Howren.

The judgment of the trial court is affirmed.